James R. Bramley et al., Respondents, *v.* Thomas W. Miller et al., Acting as a Board of Education of Central School District Number Two of the Towns of Andes, Delhi and Bovina, et al., Appellants.

308

(Argued January 31, 1936; decided March 10, 1936.)

*Livingston S. Lathrop* and *Charles B. Johnson* for Thomas W. Miller et al., acting as a Board of Education of Central School District Number Two of the Towns of Andes, Delhi and Bovina, appellants. The irregularity in the petition filed in the town clerk's office does not invalidate the action of the voters at an election subsequently held. (*Matter of Hurley* v. *Cheshire,* 234 App. Div. 464; 259 N. Y. 582; *People ex rel. Hirsch* v. *Wood,* 148 N. Y. 142; *Matter of Eggleston,* 51 App. Div. 38; *Matter of Krieger,* 59 App. Div. 348; *People ex rel. Crane* v. *Chandler,* 41 App. Div. 178; *Matter of Clement,* 29 Misc. Rep. 29; *Salducco* v. *Etkin,* 268 N. Y. 606.)

*Ernest E. Cole, Charles A. Brind, Jr.,* and *Joseph Lipsky* for Frank P. Graves, as Commissioner of Education of the State of New York, appellant. The filing of the request with the town clerks as provided in section 181 of the Education Law (Cons. Laws, ch. 16) is procedural and not jurisdictional. (*Lair* v. *Grant,* 137 Misc. Rep. 470; *Gardiner* v. *Ginther,* 232 App. Div. 296; *State* v. *Young,* 84 Mo. 90; *State* v. *Lester,* 50 S. W. Rep. [2d] 386; *Scarborough* v. *Eubank,* 93 Tex. 106.) Every statutory provision relating to the organization of the central district has been reasonably complied with. (*Salducco* v. *Etkin,* 268 N. Y. 606.)

*Frederick W. Youmans* and *Hamilton J. Hewitt* for respondents. The petition filed was invalid. Fifteen taxable inhabitants did not sign the request for a meeting of the inhabitants to establish the central school. (*Witherhead* v. *Ort*, 223 App. Div. 626; 249 N. Y. 567; *Matter of Donner-Hanna Coke Corp.*, 212 App. Div. 338; 241 N. Y. 530; *Chapman* v. *City of Brooklyn*, 40 N. Y. 372; *Miller* v. *City of Oneida*, 153 Misc. Rep. 438; *Matter of Annexation* v. *Chester*, 174 Penn. St. 180; *Elkin* v. *Deshler*, 25 N. J. L. 180.) The defect was jurisdictional and goes to the very foundation of the proceedings for the formation of the proposed central rural school district. (*Matter of Lerner* v. *Cohen*, 262 N. Y. 450; *Matter of Brownell*, 239 App. Div. 153; *Matter of Burgin*, 267 N. Y. Supp. 919; *Matter of Swarthout*, 76 Misc. Rep. 24; *Matter of Booth*, 119 Misc. Rep. 243; *Matter of Murphy*, 189 App. Div. 135; *Kennedy* v. *Warren*, 100 N. Y. Supp. 616; *Jarl Co.* v. *Village of Croton-on-Hudson*, 258 N. Y. 303; *State* v. *Superior Court*, 191 Pac. Rep. 622; *Brooker* v. *Ludlow*, 179 N. W. Rep. 145; *Maddox* v. *Gilbert*, 140 S. E. Rep. 358; *Yeager* v. *Merritt*, 120 So. Rep. 832; *People* v. *Board of Education*, 140 N. E. Rep. 22; *Logue* v. *Batterton*, 247 Ill. 605; *People* v. *Town of Oldtown*, 88 Ill. 202.) Plaintiffs are not estopped from raising the question of the sufficiency of the petition. (*Gwynne* v. *Board of Education*, 259 N. Y. 191.)

CRANE, Ch. J. We are of the opinion that the provisions of article 6-B of the Education Law (Cons. Laws, ch. 16) relating to central rural schools have been substantially complied with and, even if they have not, it is too late for the plaintiffs to raise any objection.

On October 5, 1933, Frank P. Graves, Commissioner of Education, pursuant to section 180 of the Education Law, laid out a central school district in the towns of Andes, Delhi and Bovina, in the county of Delaware. The legality and existence of this central school district are not questioned. It has been created and exists pursuant to the statutes of this State. Whether or not it shall be

governed by a board of education, pursuant to the other provisions of article 6-B, is the question before us. If no meeting of the voters in this central school district is called, the schools in the existing districts named in the order of the Commissioner of Education continue to be maintained and operated just as if no central district had been established. If, however, a meeting of the voters of the district were called in the manner prescribed in section 181, and a resolution were adopted to establish a central school in said district, then a board of education would be elected and the schools of the central school district would be maintained and operated in conformity with the remaining provisions of the article. A meeting of the voters in the district was called. A petition was filed by sixteen alleged residents and taxable inhabitants requesting a meeting of the inhabitants of the central school district be called to vote upon the question, " Shall a Central School District be organized as laid out by the Commissioner of Education and a Central School District be established therein under the provision of Article 6-B of the Education Law? "

The formalities were taken, pursuant to the provisions of section 181 of the Education Law, which reads: " Whenever fifteen persons who are residents and taxable inhabitants in any such district shall unite in a request for a meeting of the inhabitants of such district to determine whether such school shall be established, and file the same in writing with the town clerk of the town in which such district is located, or if located in more than one town, with the town clerk of each town in which any part of such district is, it shall be the duty of each town clerk with whom such notice is filed to post a notice of such meeting, not less than five or more than ten days after the same is filed in his office * * *. If a weekly or daily newspaper be published within such school district the notice shall be published therein by the clerk preparing the notice, at least three days before the meeting." Section 182 provides that a meeting held, pursuant to such

notice, shall be organized by the election of a chairman and clerk and, if fifteen qualified voters of the district be present, they may by an affirmative vote of a majority adopt a resolution to establish a central school in said district.

After receiving such petition the Town Clerk of the town of Andes called a meeting of the voters of the central district in accordance with the law, which meeting was held on the 26th day of October, 1933, and the following resolution was adopted by a vote of 290 to 218:

"*Resolved*, that a Central School District be organized as laid out by the Commissioner of Education and a Central School be established under the provisions of Article 6-B of the Education Law of the State of New York, comprising Union Free School District No. 2 of the Town of Andes, Common School Districts Nos. 4, 5, 7, 9, 14, 15, 17, 18, 19, 20, 21 and 23 of the Town of Andes, Common School District No. 12 of the Towns of Andes and Delhi, and Common School Districts Nos. 7 and 8 of the Towns of Bovina and Andes, all of said Union Free and Common School Districts being in the County of Delaware and State of New York."

The voters at said meeting elected also a Board of Education composed of five members which, after November 13, 1933, pursuant to the order of the Commissioner of Education designating the Central School District No. 2, commenced to function under the above provisions of the Education Law.

Certain irregularities appeared in these petitions as filed with the Town Clerk. Jennie McCune was not a taxable inhabitant, which left the petition with fifteen names. The petition as filed in the town of Delhi through inadvertence did not contain the name of Charles B. Johnson. One of the signers, Austin Ingram, was a farmer living with his wife upon the farm. The title actually stood in her name although he worked the farm. These matters were known to the petitioners, or could easily have been ascertained by them if it were possible for the

town clerks or other authorities to have discovered them. No objections were made to the holding of the meeting as called, and no statements or claims of any kind were pressed at the meeting or before it was called to the effect that it had not been properly and legally called or that the request as filed was in any way defective. All sides prepared for the meeting, determined no doubt to abide by the result. As stated, two hundred and ninety voted in behalf of the resolution, two hundred and eighteen against. The defeated faction then resorted to technicalities, having been beaten on the merits, and appealed to the Commissioner of Education.

On or about December 23, 1933, nearly sixty days after the establishment of the central school district, certain residents of that district appealed to the Commissioner of Education, pursuant to section 890 of the Education Law, from the order of the Commissioner laying out the central school district and the proceedings had thereunder. On the 16th day of January, 1934, the said Commissioner, after a full hearing and argument, dismissed the case. This action was then commenced on the 10th day of February, 1934, for a declaratory judgment stating the rights of the respective parties and school districts and enjoining the Board of Education of the Central Rural School District No. 2 from taking any action, pursuant to article 6-B of the Education Law, and asking that the orders of the Commissioner of Education of October and of November, 1933, be canceled and annulled; in other words, that the proceedings of the Commissioner and the Board of Education be declared null and void.

The provisions of the Education Law were substantially complied with, and the minor defects appearing in the petition calling for the meeting of October 26, 1933, could not and did not affect the legality of that meeting after it had been acquiesced and participated in by the inhabitants of the district without any objection or protest.

No claim is made in this action that sufficient notice was not given of the meeting called for October 26, 1933. The Town Clerk gave and published the notice as required by law, and all these people knew about it. So the trial court found. As stated, they appeared at the meeting and voted upon the proposition; in fact, over five hundred voted. The result of this election is sought to be set aside, not because of insufficient notice or because the electors had no opportunity to vote, but solely because the call for the meeting may have lacked one signature. This is not within the spirit of the principle which governs elections generally. The result of a vote taken on election day is not rendered void because of the irregularity of a nominating convention or nominating petitions. Whatever objection there may be to the questions to be submitted or to the nominations as made must be raised and disposed of before election day. The result of the election is final and wipes out all these prior irregularities, if there be any.

And this rule regarding elections on the general election day throughout the State applies to the elections on other days in cities or villages or towns which may occur during other portions of the year. Conceding that the proposition has been fairly submitted in accordance with law; that the electors have had the notice required by law; and that they have participated without hindrance so that the election is a fair and properly conducted election, all minor irregularities and defects in working the machinery or procedure whereby the election is brought about are insufficient to avoid the result.

The minor irregularity of the omission of one qualified voter from the request for the call of such a meeting in no way affects the election held in accordance with law. There were fifteen names to the request, all of whom were taxable inhabitants of the district with the exception of one whose farm stood in his wife's name instead of his own. Both were living together on the farm. Such a

minor, immaterial defect or omission, not discovered by any of the parties, apparently, before the election duly held, should not be used by the courts for the purpose of wiping out and destroying the Central School District Board of Education established and in operation since November 13, 1933.

Again, the inconvenience and the danger which would result in applying any such strict rule of construction is quite apparent. Whether or not a district meeting properly called after due notice by the Town Clerk may vote upon a proposition to establish a central school district, although the call of the meeting has not been requested by fifteen taxable residents, is not here for decision. The statute says that it shall be the *duty* of the Town Clerk when fifteen inhabitants request it, to call a meeting. Surely a meeting held by all the residents of a district voting unanimously for a central school district would not render the proceedings void because there had not been the previous request. In other words, after a meeting has actually been held and notice given to every one in accordance with law, and the statute complied with in every particular, any defect in *the request* for the call of the meeting not objected to by any of the participating parties or taxable inhabitants of the school district, cannot have and should not have any effect upon the result of the proceedings taken at that meeting.

The plain purpose of section 181 is to give the inhabitants of the proposed school district the opportunity to express their will at a meeting of which proper notice has been given. The duty of giving such notice is placed upon the town clerks. The requirement that the town clerks *shall* act upon the request of " fifteen persons who are residents and taxable inhabitants in any such district " is merely the means provided to set the town clerks in motion. In the words of the statute, " it shall be the duty of each town clerk with whom such *notice* is filed to post a notice of such meeting," etc. The request is,

as the statute indicates, a *notice* that fifteen taxable inhabitants desire such a meeting. It has no other function. The statute there confers upon a specified number of taxable inhabitants the *right* to compel the town clerks to act. It places upon the town clerks the responsibility of determining whether the formal requirements for the assertion of that right have been complied with. If by error a town clerk accords that right to a lesser number, the call of the meeting may be irregular, but the Legislature could not, reasonably, have intended that, for such error, the will of the inhabitants of the district expressed at a meeting held upon the notice specified in the statute, should be void. (Cf. *State ex rel. Schmutzler* v. *Young*, 84 Mo. 90; *State ex rel. Thompson* v. *Lester*, 50 S. W. Rep. [2d] 386.)

*Jarl Co.* v. *Village of Croton-on-Hudson* (258 N. Y. 303) is not in point. That case involved the annexation of territory to a village and the petition had to be signed by residents or landowners of the territory to be annexed. A majority of those in the annexed territory had to sign. It was the majority who signed the petition which determined their consent. Thereafter the village took a vote for its consent. Of course these two cases are entirely dissimilar. No such election was held in the *Jarl* case as in this case.

It follows that the judgment of the Appellate Division and that of Special Term should be reversed and the complaint dismissed, with costs in all courts.

LEHMAN, O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgments reversed, etc.